UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANTONIO TURNER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:15CV00132 AGF |
| | ) | |
| MICHAEL BOWERSOX, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the pro se petition of Missouri state prisoner Antonio Turner, filed on January 15, 2015, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On April 6, 2010, following a two-day trial, a jury convicted Petitioner of first degree robbery and armed criminal action related to an incident on March 9, 2008. He was sentenced on May 14, 2010, to concurrent terms of 20 years for the robbery and three years for the armed criminal action. Petitioner's convictions and sentences were affirmed on direct appeal. Petitioner's motion for state post-conviction relief was denied following an evidentiary hearing, and this denial was affirmed on appeal.

For federal habeas relief, Petitioner claims that his constitutional rights were violated in the following ways: (1) the oral sentence did not conform to the written sentence; (2) there was insufficient evidence to support the convictions; (3) defense counsel was ineffective for failing to secure the testimony of a correctional officer (Charles Boon) who escorted Petitioner to a lineup; (4) defense counsel was ineffective

for failing to object to the prosecutor's comments during closing argument comparing Petitioner to a used car salesman and stating that the jury should not find Petitioner credible in light of his five prior felony convictions; and (5) defense counsel was ineffective for failing to object to the prosecutor's comments in closing argument suggesting that Petitioner's gun was loaded when there was no evidence that it was, and according to Petitioner, it was not.

Respondent argues that habeas relief should be denied because Petitioner's first claim was procedurally defaulted, and, in any event, the state courts' adjudication of that claim and all remaining claims was legally and factually reasonable.[1] For the reasons set forth below, habeas relief will be denied.

## BACKGROUND

**Indictment and Trial**

Petitioner was charged by indictment with the crimes of conviction, as well as with being a prior and persistent offender, having pled guilty in 2005 to possession of a controlled substance, and in 1996 to two counts of first-degree robbery and two counts of armed criminal action. At trial, Mohammad Bhatti testified that on the evening of March 9, 2008, he was working on a house he owned in the City of St. Louis. At about 8:00 p.m., when he was putting tools in his truck parked in front of the house, a man he did not know walked up and began talking with him. Bhatti testified that the man stood close to

---

[1] Respondent also argues that Petitioner can no longer challenge his conviction for armed criminal action, as he had fully served the sentence for that conviction by the time this action was filed. While Respondent is correct on this point, all of Petitioner's claims relate equally to both convictions.

him and he could see his face clearly, and further, that the street lights were working at the time. After asking him how he was doing, the man displayed a rifle from under his coat, pointed it at Bhatti, and demanded all of his money. Bhatti reached into his pocket, pulled out his wallet, and pushed it toward the man. At that point, police offers appeared on the scene and the man ran away. The encounter with the man had lasted two to three minutes. Bhatti testified that the robber was a little taller than himself. Bhatti then identified Petitioner, who is African American, in the courtroom as the perpetrator. He testified that at the end of April 2008, he also identified Petitioner in a live lineup.

On cross-examination, defense counsel attempted to weaken Bhatti's identification of Petitioner, pointing out that at 8:00 p.m. in the beginning of March it would have been dark outside, that Petitioner was 5' 10', whereas Bhatti was only 5' 5", and that Bhatti told the police at the scene that the robber had a medium build, not a big build. Bhatti testified on redirect examination that he would never forget the face of the man who robbed him.

Police Officer Stephen Slama testified that at the time of the crimes, he was driving in the neighborhood in an unmarked minivan with his partner, looking for a certain individual. As he drove down the street in question, he saw an Asian male talking to a black male whose face Slama saw. Slama then saw the Asian male retrieve his wallet from his pocket and push it toward the black male. Slama testified that he thought a drug transaction was occurring and parked the van, at which point the black male's back was toward him. He heard the black male yell, "Give me your money or I'll kill you," and saw him grab the victim's wallet. Slama exited the van and announced

3

"police," at which point the black male immediately fled. Slama identified Petitioner as the black male. Slama began chasing Petitioner, who had dropped a rifle as he fled. He testified that Petitioner did not appear to have a limp or have any trouble running. Slama did not have a radio or bullet-proof vest and so stopped chasing Petitioner. Slama testified that after he had exited his vehicle, he saw Petitioner's face for several seconds. He testified that it was dusk, but there were streetlights and he saw Bhatti and Petitioner clearly.

Slama testified that he radioed in a description of the robber as 5' 10" to 5' 11", 25 to 30 years old, medium complected, and stocky, wearing a puffy coat. A few weeks later, while Slama was at the city jail for an unrelated matter, he saw Petitioner and recognized him at the person who had robbed Bhatti. The prosecutor showed Slama a photo of the live lineup that had been conducted in connection with the robbery and Slama identified the photo of Petitioner as the perpetrator. On cross-examination, Slama acknowledged that he had described the robber as weighing 185 pounds, in addition to being stocky.

Police Detective Robert Skaggs testified that on April 28, 2008, he interviewed Petitioner about the Bhatti robbery, after reading Petitioner his constitutional rights. Initially, Petitioner denied involvement, but after Skaggs told Petitioner that police had information connecting him to the robbery, Petitioner said, "All right. You got me. Yeah, I did the robbery. You can't – you won't be able to pin it on me." Skaggs testified that he then put Petitioner in a live lineup and Bhatti identified him immediately without any doubt or hesitation. When Skaggs told Petitioner that he was picked out of the lineup

4

and asked him if he wanted to talk about that, Petitioner said, "No, I guess I'm going back to jail."

The only witness for the defense was Petitioner. He testified that he had prior convictions for two counts of first-degree robbery, two counts of armed criminal action, and one count of "possession." He denied committing the crimes of conviction and making the statements to Skaggs noted above. Petitioner testified that he was 5' 10' and weighed approximately 225 pounds at the time of the robbery. Petitioner testified that he did not remember where he was at the time of the robbery, and that for the past 11 years or so he had trouble with his left knee and could not run, and always limped. The trial transcript indicates that as Petitioner left the stand, he showed the jury his swollen left ankle, and limped back to his seat. The state presented, as a rebuttal witness, the deputy sheriff who had accompanied Petitioner to and from the courtroom multiple times during the trial. He testified that, prior to seeing Petitioner limp as he left the stand, he had never observed him limping or having any problems at all getting around. Defense counsel admitted into evidence medical records from 2000 to 2005 showing that Petitioner had a movable "knot" in his left knee that caused him pain and range of motion problems.[2]

During closing argument, the prosecutor stated as follows:

What's the thing a person in that situation has to be most concerned with? That the person holding that gun stays calm. Stays happy. Right? Because the one thing you don't want to see in that situation is that person suddenly

---

[2] These records are not part of the record before this Court. They are described in detail in Petitioner's brief on direct appeal, ECF No. 8-3 at 7-9, and the accuracy of this description is not challenged.

> looking really pissed off or really angry. Because then the last thing Mr. Bhatti would have heard would have been the sound of the gunshot. So he was focused.

ECF No. 8-1 at 73. Defense counsel objected that this was "clearly improper argument, total and complete speculation," ECF No. 81 at 72, and the objection was overruled. Defense counsel did not object to the prosecutor's comments in closing argument comparing Petition to a used car salesman and stating that the jury should not find Petitioner credible in light of his five prior felony convictions. In his own closing argument, defense counsel argued that the State had not proved beyond a reasonable doubt that Petitioner was the perpetrator. During deliberations, the jury asked for Petitioner's medical records and they were provided to the jury.

After the case was submitted to the jury, the State presented evidence that Petitioner had pled guilty in 2005 to possession of a controlled substance, as charged in the indictment. The Court made a finding beyond a reasonable doubt that Petitioner was a prior offender subject to court sentencing. As noted above, the jury found Petitioner guilty of first-degree robbery and armed criminal action. No jury punishment phase was held; rather, the trial court sentenced Petitioner on May 14, 2010. In pronouncing the sentence in court, the trial court did not state that Petitioner was being sentenced as a prior offender. Petitioner did not object. The written judgment and sentence showed that Petitioner was sentenced as a prior offender.

## **Direct Appeal**

Petitioner raised several claims on direct appeal, including, as relevant here, the first two claims he raises in his habeas petition. The Missouri Court of Appeals held that the claim regarding the inconsistent oral and written sentences was defaulted when Petitioner did not object at sentencing. The court further held that plain error review was not warranted. The court acknowledged that the trial court did not comply with the "technical requirements" of Mo. Rev. Stat. § 558.021, which provides that in a jury trial, the facts supporting a finding that a defendant was a prior and persistent offender were to be established and found prior to submission of the case to the jury. But the court concluded that the failure of the trial court to make specific findings was a procedural deficiency, in light of the fact that Petitioner testified to prior convictions, thus sufficient evidence of his prior offender status was offered prior to the case's submission to the jury, and further, the trial court's action in sentencing Petitioner without a jury showed that the court "effectively found Petitioner to be a prior offender."

The appellate court stated that generally, a written sentence and judgment must be entered as orally pronounced, but that there was an exception to the general rule when the oral sentence is not materially different from the written one, and such was the case here. The court stated that as Petitioner failed to demonstrate manifest injustice due to being sentenced as a prior offender, the court declined to proceed with plain error review.

The state appellate court rejected the insufficiency-of-the-evidence claim, in light of the two in-court identifications and the lineup identification of Petitioner as the perpetrator, as well as Detective Skagg's testimony about the incriminating statements

Petitioner made to him. The court held that a rational trier of fact reasonably could have found Petitioner guilty beyond a reasonable doubt, and could have resolved any and all inconsistencies in the identification evidence in favor of the State.

**State Postconviction Proceedings**

For state postconviction relief, Petitioner asserted the three ineffective assistance of counsel claims he now raises in his habeas petition. With respect to the first claim, Petitioner maintained that Correctional Officer Boon's testimony would have supported Petitioner's own testimony that he did not make any statement to Detective Skaggs suggesting he had committed the robbery. Petitioner argued that but for defense counsel's failure to call Boon, there was a reasonable probability that the outcome of Petitioner's trial would have been different.

The state court held an evidentiary hearing on March 21, 2013, at which Boon and defense counsel testified. Boon testified that his task was to help walk Petitioner to the April 28, 2008 lineup, that Petitioner was not a willing participant, and that Petitioner asked for an attorney. Boon could not recall if he was present when Petitioner was interviewed by the police officers. Boon testified that he was never contacted to testify at Petitioner's trial, that he had had surgery in April 2010, and had he been asked and available, he would have been willing to testify. He stated that if asked to testify, his trial testimony would have been "pretty much" the same as at the hearing. ECF No. 8-7 at 4-10.

Defense counsel testified that his investigator spoke to Boon, and that counsel intended to call Boon at trial and had endorsed him as a witness. Counsel contacted the

facility where Boon worked to let him know the trial was starting, and was informed at that time that Boon was unavailable because he had just had surgery. Counsel did not know whether the surgery was planned in advance or came up suddenly, but he had not been informed about the surgery before trial. Counsel also testified that he did not consider deposing Boon because as a general rule his office did not depose their own witnesses unless there was some foreseeable unavailability. Because the facility where Boon worked was attached to the courthouse where the trial took place, and because counsel had no knowledge of a foreseeable problem with Boon's availability, he did not see a reason to depose him to preserve his testimony.

In affirming the motion court's denial of Petitioner's motion for post-conviction relief, the Missouri Court of Appeals applied the standard of *Strickland v. Washington*, 466 U.S. 687 (1984), and held that defense counsel's performance did not fall below the standard of reasonably competent counsel in failing to secure the testimony of Boon, because Boon's unavailability was not foreseeable. The state appellate court rejected Petitioner's claim regarding defense counsel's failure to object to the prosecutor's comment quoted above about Petitioner's prior convictions, concluding that any objection would not have been meritorious, as the comments were not used as improper "propensity" evidence, but were rather used as a permissible attack on Petitioner's credibility.

Lastly, the Missouri Court of Appeals held that an objection, based on prosecutorial misconduct in misrepresenting the evidence, to the prosecutor's above-quoted statement about Petitioner's gun being loaded would have rightly been overruled,

9

as the comment went to the victim's state of mind, a permissible matter for closing argument.

## **DISCUSSION**

### **Standard of Review**

Federal habeas relief is available to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a claim has been adjudicated on the merits in state court, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that application for a writ of habeas corpus cannot be granted unless the state court's adjudication:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "[A] determination of a factual issue made by a State court shall be presumed to be correct," 28 U.S.C. § 2254(e)(1), and the petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). A habeas petitioner meets the demanding standard for relief "only

when he shows that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Dunn v. Madison*, 138 S. Ct. 9, 11(2017) (citation omitted).

**Inconsistency of the Oral and Written Sentences**

Rather than decide the procedural default issue with respect to Petitioner's first claim, the Court will address the claim on the merits. *See Nance v. Norris*, 392 F.3d 284, 291 (8th Cir. 2004) (holding that a court may by-pass a procedural default question and proceed to the merits). A habeas claim grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. *Engle v. Isaac*, 456 U.S. 107, 120-21 (1982); E*venstad v. Carlson*, 470 F.3d 777, 782 (8th Cir. 2006).

Here, the oral sentence and the written sentence were the same: 20 years for the robbery and three years for the armed criminal action, to be served concurrently. The Court does not believe that any federal constitutional right or federal law was violated by the fact that in pronouncing the oral sentence, the trial court did not state that Petitioner was being sentenced as a prior offender. There is no dispute that the record supported the finding that Petitioner was a prior offender under Missouri law, as he had been charged, and the trial court made clear in the written sentence that he was being sentenced as such. The procedural irregularities presented here did not constitute a federal constitutional right. *See Bell v. Taylor*, 198 F.3d 249 (8th Cir. 1999) (denying federal habeas relief where Missouri state court found before trial that the petitioner was a persistent offender,

11

but did not restate that finding in the oral sentence or original written sentence, later amending the written sentence to reflect the finding).

**<u>Sufficiency of the Identification Evidence</u>**

Under *Jackson v. Virginia*, 443 U.S. 307 (1978), "a state prisoner is entitled to habeas corpus relief if a federal judge finds that 'upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.' " *McDaniel v. Brown*, 558 U.S. 120, 121 (2009) (quoting *Jackson*, 443 U.S. at 324). In a *Jackson* analysis, a court must assume that the trier of fact resolved all conflicting evidence in favor of the prosecution and defer to that resolution. *Id.* at 133. This Court may only grant habeas relief on this claim if the Missouri Court of Appeals's conclusion that the evidence satisfied the *Jackson* sufficiency of evidence standard is "both incorrect and unreasonable." *Garrison v. Burt*, 637 F.3d 849, 855 (8th Cir. 2011).

Here, the state appellate court reasonably held that Bhatti and Detective Skaggs' identification of Petitioner in court, and Bhatti's lineup identification of Petitioner, together with Skagg's testimony about the incriminating statements Petitioner made to him, was sufficient evidence for a reasonable jury to find that Petitioner was the perpetrator. *See, e.g., Williams v. Bowersox*, 2017 WL 2645834, at *5 (E.D. Mo. June 20, 2017). As the state court held, the jury was entitled to give little relevance to Bhatti's testimony that the perpetrator was just a little taller than Bhatti was, and the jury was entitled not to give credence to Petitioner's testimony that he did not commit the crimes, that he did not make the incriminating statements to Skagg, and that he could not have been the robber because he could not run, as Bhatti and Skaggs testified the robber had

12

done. Petitioner's challenges to the credibility of the State's witnesses' testimony are unavailing. *See Garrison*, 637 F.3d at 855 (rejecting a habeas petitioner's challenge to the sufficiency of the identification evidence); *Wenfeel v. Wallace*, 2016 WL 6269651, at *6 (E.D. Mo. June 2, 2016), *R & R adopted*, 2016 WL 6248080 (E.D. Mo. Oct. 26, 2016) (same). In sum, the Court finds that the state court's decision is not contrary to, or an unreasonable application of, clearly established federal law. This claim fails on the merits.

**Assistance of Defense Counsel**

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show ineffective assistance of counsel, a habeas petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Strickland*, 466 U.S. at 687. "*Strickland*'s first prong sets a high bar. A defense lawyer navigating a criminal proceeding faces any number of choices about how best to make a client's case. The lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (quoting *Strickland*, 466 U.S. at 690).

"Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citations omitted). To

13

show prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *See Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citation omitted). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2005). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id*. at 699.

Here, this Court cannot say that the state appellate court's adjudication of the three ineffective assistance of counsel claims Petitioner raises was in any way legally or factually unreasonable. The record supports the state court's conclusion that defense counsel's performance did not fall below the standard of reasonably competent counsel in failing to secure the testimony of Boon, because Boon's unavailability was not foreseeable. Moreover, Petitioner has not shown how Boon's testimony at trial that he did not hear Petitioner make incriminating statements to Skaggs would have helped Petitioner, as Boon was not present when those statements were made.[3]

---

[3] Detective Skaggs testified that Petitioner's admission to committing the offense occurred before the lineup, which is when Boon heard Petitioner request an attorney.

The state court reasonably determined that defense counsel's failure to object to the prosecutor's comment about Petitioner's prior convictions, would not have been meritorious because those comments constituted a permissible attack on Petitioner's credibility. Because Petitioner took the stand in his own defense and was therefore subject to cross examination regarding prior convictions for impeachment purposes, the arguments made by the State in closing argument regarding Petitioner's credibility were permissible. Since counsel's objection would have been without merit, counsel cannot be found to have acted ineffectively in this regard. *See Griffin v. Dormire*, 2010 WL 4366547, at *5 (E.D. Mo. Sept. 24, 2010), R & R adopted, 2010 WL 4366542 (E.D. Mo. Oct. 28, 2010).

Lastly, the Missouri Court of Appeals reasonably held that defense counsel was not ineffective for failing to object to the prosecutor's statement quoted above regarding Bhatti's focus during the robbery when the gun was pointed at him, on the basis of prosecutorial misconduct. As noted above, defense counsel did object to the comment on the basis that it was improper and constituted speculation. As the state appellate court noted, the comment was directed to the victim's state of mind, and was not an assertion that the gun was actually loaded. Thus, the comment did not constitute prosecutorial misconduct by arguing facts outside the record, and an objection on that basis would have been meritless; counsel was therefore not ineffective for failing to raise such an objection. Moreover, any prejudicial impact from the comment at issue was insignificant in the context of the prosecutor's overall argument and the evidence at trial. *See Johnston v. Bowersox*, 119 F.Supp.2d 971, 985 (E.D. Mo. 2000) (holding that defense counsel's

15

failure to object to the prosecutor's argument was not ineffective where the argument was not in fact objectionable and/or because the prejudicial impact was insignificant in the overall context of the evidence and argument presented to the jury), *aff'd sub nom. Johnston v. Luebbers*, 288 F.3d 1048 (8th Cir. 2002). In sum, the decision of the Missouri Court of Appeals denying Petitioner's claims that defense counsel provided ineffective assistance of counsel, due to a failure to secure Boon's testimony, and failure to object to the prosecutor's closing statements noted above was not contrary to or an unreasonable application of *Strickland*.

## **CONCLUSION**

The Court concludes that Petitioner is not entitled to federal habeas relief. The Court does not believe that reasonable jurists might find the Court's assessment of the procedural or substantive issues presented in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. § 2254(d)(2). *See Buck,* 137 S. Ct. at 773 (standard for issuing a Certificate of Appealability) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Antonio Turner for a writ of habeas corpus relief is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not be

16

issued.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 5th day of March, 2018.